

O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HENRY WEGNER, | Case No. EDCV 13-0634-JPR |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER AFFIRMING THE COMMISSIONER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.   PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed January 27, 2014, which the Court has taken under submission without oral argument.  For the reasons discussed below, the Commissioner's decision is affirmed and this action is dismissed.

1

## II.    BACKGROUND

Plaintiff was born on October 11, 1950.  (AR 28.)  He completed the 12th grade.  (AR 30.)  He previously worked as a self-employed mason.  (AR 170.)

On November 19, 2009, Plaintiff filed an application for DIB.  (AR 62-63, 150-51.)  He alleged that he had been unable to work since December 31, 2008, because of back, shoulder, left-elbow, hand, and finger pain; diabetes; high blood pressure; and an enlarged prostate.  (AR 150, 169.)  After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge.  (AR 74.)

A hearing was held on January 17, 2012, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE").  (AR 24-61.)  In a written decision issued February 24, 2012, the ALJ determined that Plaintiff was not disabled.  (AR 8-16.)  On March 5, 2012, Plaintiff requested that the Appeals Counsel review the ALJ's decision (AR 22); on February 12, 2013, the Appeals Council denied the request for review (AR 1-3).  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to

2

1  support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter</u>
2  <u>v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than
3  a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504
4  F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880,
5  882 (9th Cir. 2006)).  To determine whether substantial evidence
6  supports a finding, the reviewing court "must review the
7  administrative record as a whole, weighing both the evidence that
8  supports and the evidence that detracts from the Commissioner's
9  conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.
10 1996).  "If the evidence can reasonably support either affirming
11 or reversing," the reviewing court "may not substitute its
12 judgment" for the Commissioner's.  <u>Id.</u> at 720-21.
13 **IV.  THE EVALUATION OF DISABILITY**
14     People are "disabled" for purposes of receiving Social
15 Security benefits if they are unable to engage in any substantial
16 gainful activity owing to a physical or mental impairment that is
17 expected to result in death or which has lasted, or is expected
18 to last, for a continuous period of at least 12 months.  42
19 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257
20 (9th Cir. 1992).
21     A.   <u>The Five-Step Evaluation Process</u>
22     The ALJ follows a five-step sequential evaluation process in
23 assessing whether a claimant is disabled.  20 C.F.R.
24 § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th
25 Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the
26 Commissioner must determine whether the claimant is currently
27 engaged in substantial gainful activity; if so, the claimant is
28 not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

3

1  If the claimant is not engaged in substantial gainful activity,
2  the second step requires the Commissioner to determine whether
3  the claimant has a "severe" impairment or combination of
4  impairments significantly limiting his ability to do basic work
5  activities; if not, a finding of not disabled is made and the
6  claim must be denied.  § 404.1520(a)(4)(ii).  If the claimant has
7  a "severe" impairment or combination of impairments, the third
8  step requires the Commissioner to determine whether the
9  impairment or combination of impairments meets or equals an
10 impairment in the Listing of Impairments ("Listing") set forth at
11 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is
12 conclusively presumed and benefits are awarded.
13 § 404.1520(a)(4)(iii).  If the claimant's impairment or
14 combination of impairments does not meet or equal an impairment
15 in the Listing, the fourth step requires the Commissioner to
16 determine whether the claimant has sufficient residual functional
17 capacity ("RFC")[1] to perform his past work; if so, the claimant
18 is not disabled and the claim must be denied.
19 § 404.1520(a)(4)(iv).  The claimant has the burden of proving he
20 is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at
21 1257.  If the claimant meets that burden, a prima facie case of
22 disability is established.  <u>Id.</u>  If that happens or if the
23 claimant has no past relevant work, the Commissioner then bears
24 the burden of establishing that the claimant is not disabled
25 because he can perform other substantial gainful work available
26

---

27      [1]   RFC is what a claimant can do despite existing
28 exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
   <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  in the national economy.  § 404.1520(a)(4)(v).  That

2  determination comprises the fifth and final step in the

3  sequential analysis.  § 404.1520; <u>Lester</u>, 81 F.3d at 828 n.5;

4  <u>Drouin</u>, 966 F.2d at 1257.

5        B.    <u>The ALJ's Application of the Five-Step Process</u>

6        At step one, the ALJ found that Plaintiff did not engage in

7  any substantial gainful activity from December 31, 2008, his

8  alleged onset date, to December 31, 2010, the date he was last

9  insured for DIB.  (AR 10.)  At step two, the ALJ concluded that

10  Plaintiff had the severe impairments of "degenerative disc

11  disease of the lumbar spine and degenerative joint disease of the

12  shoulders."  (<u>Id.</u>)  The ALJ found that Plaintiff's obesity,

13  hypertension, diabetes, hypothyroidism, dyslipidemia, and

14  osteoarthritis of the hands were nonsevere.  (AR 10-11.)  At step

15  three, the ALJ determined that Plaintiff's impairments did not

16  meet or equal any of the impairments in the Listing.  (AR 11-12.)

17  At step four, the ALJ found that Plaintiff had the RFC to perform

18  a limited range of medium work.[2]  (AR 12.)  Based on the VE's

19  testimony, the ALJ concluded that Plaintiff was able to perform

20  his past relevant work as a "stonemason" through the date last

21  insured.  (AR 16.)  Accordingly, the ALJ determined that

22  Plaintiff was not disabled.  (<u>Id.</u>)

23

24

25        [2]    "Medium work" involves "lifting no more than 50 pounds
26  at a time with frequent lifting or carrying of objects weighing
    up to 25 pounds."  § 404.1567(c).  The regulations further
27  specify that "[i]f someone can do medium work, we determine that
    he or she can also do sedentary and light work," as defined in
28  § 404.1567(a)-(b).

5

**V. DISCUSSION**

Plaintiff claims the ALJ erred in (1) concluding that he could return to his past relevant work and (2) assessing his credibility.  (J. Stip. at 3.)

A.  Past Relevant Work

Plaintiff contends the ALJ erroneously found that he could return to his past work as a mason.  (Id. at 4-6, 7-9.) Specifically, Plaintiff argues that the ALJ (1) failed to include the medical consultants' findings of climbing and reaching limitations in his RFC and the hypothetical to the VE and (2) improperly classified his past relevant work.  (Id.)

1.  Any error in the ALJ's RFC determination and VE hypothetical is harmless

Plaintiff contends that the ALJ erred in omitting from the RFC and VE hypothetical the medical consultants' limitations to "occasional climbing of ladders, ropes, and scaffolds" and "frequent overhead reaching."  (J. Stip. at 5.)  Plaintiff notes that the ALJ gave "great weight" to the medical consultants' opinions but failed to "provide[] any explanation whatsoever as to how or why she apparently [] omitted" those limitations from the RFC and hypothetical.  (Id.)  Plaintiff argues that the ALJ's error was "important given the fact that when asked a second hypothetical by the ALJ which included limitations to occasional climbing of ladders, ropes and scaffolds, as well as occasional overhead reaching, the [VE] clearly testified that [Plaintiff] could not perform his past work."  (Id. (citation omitted).)

6

a.   *Applicable law*

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ must consider all the medical evidence in the record and "explain in [his] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources."  20 C.F.R. § 404.1527(e)(2)(ii); <u>see also</u> § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (RFC must be "based on all of the relevant evidence in the case record").  In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints.  See <u>Bayliss</u>, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC evidence from treating-physician opinions that were "permissibly discounted").

7

b.    *Relevant facts*[3]

On April 27, 2010, Dr. D. Haaland, who specialized in orthopedics,[4] reviewed Plaintiff's medical records and completed a physical-RFC assessment.  (AR 238-42.)  Dr. Haaland listed Plaintiff's diagnoses as bilateral "[r]otator cuff tendonopathy and mild bicipital tendonitis," morbid obesity, and "DDD ajd [sic] DJD L-S spine, age compatible," presumably, degenerative disc disease and degenerative joint disease of the lumbar and sacral spine consistent with Plaintiff's age.  (AR 238.)  Dr. Haaland opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for about six hours in an eight-hour day, sit for a total of about six hours in an eight-hour day, and perform unlimited pushing and pulling.  (AR 239.)  Dr. Haaland found that Plaintiff could "frequently" climb ramps and stairs, stoop, kneel, crouch, and crawl.  (AR 240.)  He believed Plaintiff could only "occasionally" climb ladders, ropes, and scaffolds and perform only "frequent" "[o]verhead reaching" bilaterally.  (Id.)  Dr. Haaland further opined that Plaintiff's symptoms were disproportionate to what would be expected from his medically determinable impairments.  (AR 241.)  That same day, Dr. Haaland

---

[3]    Because the parties are familiar with the facts, they are summarized only to the extent relevant to the contested issues.

[4]    Dr. Haaland's electronic signature includes a medical specialty code of 29, indicating orthopedics.  (AR 242); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/ 0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

1    completed a case analysis summarizing Plaintiff's medical
2    treatment and concluding that he was "capable of medium work" and
3    "partially credible."   (AR 244.)

4         On September 21, 2010, Dr. D. Chan, who specialized in
5    internal medicine,[5] completed a case analysis summarizing
6    Plaintiff's medical treatment and affirming Dr. Haaland's RFC
7    assessment.   (AR 312-13.)

8         At the January 17, 2012 hearing, the VE testified that
9    Plaintiff had past relevant work as a "stone mason," DOT 861.381-
10   038, 1991 WL 687462.   (AR 57.)   The ALJ then asked the VE to

11        [a]ssume the existence of an individual who is 60 years
12        old as of the alleged onset date, has at least a high
13        school education and a work history as a stone mason;
14        however, assume that such an individual would be able to
15        lift 50 pounds occasionally, 25 pounds frequently; would
16        be able to sit about six hours in an eight hour day,
17        stand and walk about six hours in an eight hour day;
18        would be able to frequently kneel, stoop, crawl, and
19        crouch; frequently climb ramps and stairs; frequently
20        climb ladders, ropes, and scaffolds; there would be no
21        limitations on the use of the hands for fine or gross
22        manipulations.   Would such an individual be able to
23        perform the claimant's past, relevant work?

24
25   _____
26        [5]   Dr. Chan's electronic signature includes a medical
     specialty code of 19, indicating internal medicine.   (AR 313);
27   see Program Operations Manual System (POMS) DI 26510.089, U.S.
     Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/
28   lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug.
     29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

(AR 57-58.) The VE responded, "Yes, as generally performe[d], not as performed" at the heavy level. (AR 58.) The ALJ then asked the VE to

> assume an individual of the same age, education, and vocational background as the claimant, with the limitations . . . that such an individual would be able to lift 20 pounds occasionally, 10 pounds frequently; would be able to sit about six hours in an eight hour day, stand and walk about six hours in an eight hour day; would be able to occasional [sic] kneel, stoop, crawl, and crouch; occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and there would be no limitations on the use of the hands for fine or gross manipulations; however, such individual would be limited to occasional overhead reaching with the right dominant upper extremity.

(AR 58-59.) The VE testified that such person would not be able to perform Plaintiff's past relevant work. (AR 59.)

On February 24, 2012, the ALJ issued her written decision, finding that Plaintiff had the RFC to perform a limited range of medium work as follows:

> the claimant could lift and/or carry fifty pounds occasionally, twenty-five pounds frequently; the claimaint could sit, walk or stand for approximately six hours out of an eight-hour workday with normal breaks; the claimant could frequently kneel, stoop, crouch, crawl and climb using ramps, stairs, ladders, ropes and scaffolds and the claimaint was not limited with regard

1   to fine or gross manipulation of the upper extremities.

2   (AR 12.)  The ALJ also noted that "[i]n determining [Plaintiff's]

3   residual functional capacity," he had "given great weight" to the

4   medical consultants' opinions, in part because their RFC findings

5   were "reasonable and consistent with the objective medical

6   evidence."  (AR 15-16.)  The ALJ also relied on the VE's

7   testimony to find that Plaintiff could perform his past relevant

8   work as a stonemason "as generally performed."  (AR 16.)

9               c.   *Discussion*

10  As Plaintiff contends, the ALJ explicitly accorded "great

11  weight" to Drs. Haaland's and Chan's opinions but nevertheless

12  omitted from the RFC and VE hypothetical their findings that

13  Plaintiff was limited to occasional climbing of ladders, ropes,

14  and scaffolds and frequent overhead reaching.  Nor did the ALJ

15  provide any reason for apparently rejecting those portions of the

16  doctors' opinions.  In doing so, the ALJ likely erred.  See,

17  e.g., Ontiveros v. Astrue, No. CV 10-4215-PLA, 2011 WL 1195935,

18  at *6 (C.D. Cal. Mar. 30, 2011) (finding that ALJ erred by

19  crediting opinion and then failing to incorporate parts of it

20  into RFC limitations or provide reasons for rejecting those

21  portions); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533

22  F.3d 1155, 1164 (9th Cir. 2008) (ALJ must provide "clear and

23  convincing reasons" for rejecting uncontradicted medical opinion

24  and "specific and legitimate" reasons for rejecting contradicted

25  one).

26  Any error, however, was harmless.  The ALJ ultimately found,

27  based on the VE's testimony, that Plaintiff was not disabled

28  because he was able to perform his past relevant work as a

11

stonemason "as generally performed." (AR 16.) According to the
DOT, the stonemason job requires only "[f]requent[]" reaching and
"[o]ccasional[]" climbing, DOT 861.381-038, 1991 WL 687462, which
more than accommodated Drs. Haaland and Chan's findings that
Plaintiff was limited to frequent overhead reaching and
occasional climbing of ladders, ropes, and scaffolds (AR 240,
313). Thus, even if the ALJ had included those limitations in
Plaintiff's RFC or the VE hypothetical, it would not have
resulted in a different outcome. See Powell v. Comm'r of Soc.
Sec., 318 F. App'x 550, 551 (9th Cir. 2009) (ALJ's error in
concluding plaintiff had RFC for light, rather than sedentary,
work "was harmless because the ALJ held, at the next step, that
Plaintiff was capable of performing her past relevant work — all
of which was sedentary" (emphasis omitted)); see also Molina v.
Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless when
"'inconsequential to the ultimate nondisability determination'");
Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (error in
ALJ's failure to include RFC limitation precluding staying in one
position in VE hypothetical harmless because plaintiff's previous
job involved combination of sitting and standing).

Plaintiff erroneously contends that the ALJ's error was
"important" because "when asked a second hypothetical by the ALJ
which included limitations to occasionally climbing of ladders,
ropes and scaffolds, as well as occasional overhead reaching, the
[VE] clearly testified that [Plaintiff] could not perform his
past work." (J. Stip. at 5.) But Drs. Haaland and Chan found
that Plaintiff could perform "frequent" overhead reaching (AR
240, 313), not the more limited "occasional" overhead reaching

1   that was included in the second hypothetical (AR 59).  The second
2   hypothetical also included several other limitations that
3   exceeded those found by Drs. Haaland and Chan and included in
4   Plaintiff's RFC, such as limitations to lifting only 20 pounds
5   occasionally and 10 pounds frequently and only occasional
6   kneeling, stooping, crawling, and crouching.  (AR 58-59.)  Thus,
7   the VE's response that such a hypothetical person could not
8   perform Plaintiff's past relevant work fails to show that
9   Plaintiff, with his less significant limitations, also would be
10  unable to perform that work.

11          Plaintiff is not entitled to remand on this ground.

12              2.    The ALJ and VE properly classified Plaintiff's
13                    past relevant work

14          Plaintiff argues that the ALJ and the VE "mischaracterized
15  his past work as a stone mason[,] a medium occupation, when in
16  fact what [Plaintiff] actually did was work as a concrete-block
17  mason, a heavy occupation."  (J. Stip. at 8 (citations omitted).)

18                    a.    Applicable law

19          At step four of the five-step disability analysis, a
20  claimant has the burden of proving that he cannot return to his
21  past relevant work, either as actually or generally performed in
22  the national economy.  Pinto v. Massanari, 249 F.3d 840, 844-45
23  (9th Cir. 2001); 20 C.F.R. § 404.1520(e).  Although the burden of
24  proof lies with the claimant at step four, the ALJ still has a
25  duty to make factual findings to support her conclusion.  Pinto,
26  249 F.3d at 844.  The ALJ can meet this burden by comparing the
27  physical and mental demands of the past relevant work with the
28  claimant's actual RFC.  Id. at 844-45.

                                13

1    To ascertain the requirements of occupations as generally

2 performed in the national economy, the ALJ may rely on

3 information from the Dictionary of Occupational Titles ("DOT") or

4 VE testimony. Pinto, 249 F.3d at 845-46; SSR 00-4P, 2000 WL

5 1898704, at *2 (Dec. 4, 2000) (at steps four and five, SSA relies

6 "primarily" on DOT "for information about the requirements of

7 work in the national economy" and "may also use VEs . . . at

8 these steps to resolve complex vocational issues"); SSR 82-61,

9 1982 WL 31387, at *2 (Jan. 1, 1982) ("The [DOT] descriptions can

10 be relied upon — for jobs that are listed in the DOT — to define

11 the job as it is *usually* performed in the national economy."

12 (emphasis in original)).

13              b.    *Relevant facts*

14    In an undated disability report, Plaintiff wrote that from

15 1979 to 2008, he worked as a "self employed mason," which

16 involved

17         heavy lifting of brick, block, pavers, bags of cement.

18         Mixed cement with sand and rock using mixers, sometimes

19         hand tools such as[] shovels, hoes, etc. Demo materials

20         from job site.  Required to dig trench[e]s, grade for

21         concrete,    install    forms,    lay    &    position

22         brick/block/pavers/etc.    All  of  this  work  is  very

23         physical.

24 (AR 170.)  Plaintiff wrote that he lifted and carried block,

25 brick, pavers, stones, rocks, forms, bags of concrete, tools, and

26 equipment every day "on an on-going basis" (AR 171) and that

27 "[b]lock, brick, pavers, and forms are heavy and cumberso[me]"

28 (AR 169).  He was required to "constantly lift, rotate, and place

14

1  heavy items." (Id.) Each day, Plaintiff walked for a half hour,
2  stood for one hour, climbed for a half hour, stooped for four
3  hours, kneeled for one and a half hours, crouched for four hours,
4  crawled for a half hour, and reached for five hours. (AR 170-
5  71.) He would handle, grab, or grasp big objects for seven hours
6  a day and write, type, or handle small objects for seven hours a
7  day. (AR 171.) The heaviest weight he lifted was 100 pounds or
8  more, and he frequently lifted 25 pounds. (Id.) Plaintiff also
9  stated that he had been "doing very heavy, physical, repetitious
10  work for over the last 30 years," which he believed caused the
11  deterioration of his back, shoulders, elbow, and hands. (AR
12  169.)

13      In an undated and unsigned "Medical/Vocational Decision
14  Guide," an unidentified state-agency employee found that
15  Plaintiff was limited to medium work with frequent "posturals";
16  occasional climbing of ladders, ropes, or scaffolds; and frequent
17  overhead reaching bilaterally. (AR 178.) He or she classified
18  Plaintiff's past relevant work as "concrete block mason," listing
19  a DOT code of 861.381-018 and an "H," presumably indicating heavy
20  work.[6] (Id.) Under the heading "Medical/Vocational Decision,"
21  the employee stated that Plaintiff "has a medium RFC and cannot
22  return to [past relevant work] as a mason" but "can do other work
23  that is less physically demanding" and was therefore "not
24  disabled." (AR 179.) Plaintiff's application was denied on that
25
26
27      [6]   As discussed in Section A.1.c below, the DOT states
   that this job involves "Heavy Work" and that the "[p]hysical
28  demand requirements are in excess of those for Medium Work." DOT
   861.381-018, 1991 WL 687457.

basis at the initial and reconsideration levels.   (AR 64-72.)

At the January 17, 2012 hearing, Plaintiff testified that he had worked as a "masonry contractor" for about 30 years.   (AR 31.)   Plaintiff's attorney questioned him about that job as follows:

> Q    Mr. Wegner, the work you did before you were a contractor, and you did basically everything pertaining to, what, block walls, tile floors, all those sorts of things?
>
> A    Yes.
>
> Q    Okay.   And what specifically – what parts of that job specifically are you – can't you do now, or say a year ago, a year and a half ago?
>
> A    Any of it.   I mean, the easiest part, I mean, would be – in my job description would be to do tile because you're down on your hands and knees, but I have a very difficult time getting down, and then getting up, I would need help or have something to where I could put my arm down to get up.   So, and then the knees finally started, you know, going also, which were hurrying [sic], aching.
>
> Q    I see.   So, getting up and down off the floor would be very difficult for you?
>
> A    Oh, yes.
>
> Q    Okay.   What about lifting things?
>
> A    Okay.   Lifting I'll give you a perfect example. You know, a 12"x12" tile, you know, I could lift it, but the  stretching,  over  extension  to  lay  it,  but  then

1    pushing on it would be difficult. And then I have, like,

2    and 18"x18" tile, I got to the point probably four years

3    ago to where I couldn't handle those tile [sic] anymore

4    because the weight of them, which I wouldn't know the

5    exact weight, but again this tile you just don't have

6    something in front of you. You got to extend yourself.

7         Q    There's a lot of reaching.

8         A    Yes.

9         .  .  .  .

10        Q    Could you pick a box of tile up, do you think,

11   now, with your shoulders the way they are?

12        A    No.    Maybe with my left I'd be able to

13             struggle.

14        Q    Okay.

15        .  .  .  .

16        Q    If you had a job that required you to do, say,

17   15 boxes of tile, would you be able to load and unload 15

18   boxes of tile?

19        A    Not at all.

20        Q    .  .  .  .  And the . . . worst difficulty with

21   that . . . would be your shoulder or your back?

22        A    Both.

23   (AR 44-47.)   When asked if he was unable to do any other part of

24   his former job, Plaintiff said he "couldn't lift a wheelbarrow

25   and wheel around a wheelbarrow full of block or cement."   (AR

26   50.)

27        As discussed in Section 1.b, the VE testified that Plaintiff

28   had "worked as a stone mason, DOT 861.381-038," a "medium

17

1  occupation" that Plaintiff had "performed at the heavy level."
2  (AR 57.)   The ALJ asked the VE whether a person with Plaintiff's
3  RFC for a limited range of medium work would be able to perform
4  Plaintiff's past relevant work; the VE responded, "Yes, as
5  generally performe[d], not as performed" at the heavy level.   (AR
6  57-58.)   In her written decision, the ALJ relied on the VE's
7  testimony to find that Plaintiff was "capable of performing past
8  relevant work as a stonemason" during the insured period as
9  "generally performed."   (AR 16.)

10                    c.   *Discussion*

11      Plaintiff contends that his description of his past work in
12  the disability report was "consistent with the occupation of
13  concrete block mason," a heavy occupation, rather than the
14  occupation of stone mason, a medium occupation.   (J. Stip. at 9.)
15  Plaintiff argues that "it is obvious that the occupation of
16  concrete block mason (brick layer) is more consistent with and
17  better describes the tasks" he performed in his past relevant
18  work.   (Id.)   In support, Plaintiff points to the state-agency
19  decision guide classifying his past job as concrete-block mason.

20      The DOT defines the concrete-block-mason job[7] as "heavy
21  work" involving "[e]xerting 50 to 100 pounds of force frequently
22  . . . and/or 10 to 20 pounds of force constantly," which was "in

23
24
25  _____
26      [7]    The DOT title for this job is "bricklayer" but the
    description states that it "[m]ay be designated according to
27  material used as Cinder-Block Mason (construction);
    Concrete-Block Mason (construction); Terra-Cotta Mason
28  (construction); or work performed as Bricklayer, Maintenance (any
    industry)."   DOT 861.381-018, 1991 WL 687457.

1 excess of [the requirements] for Medium Work."[8]  DOT 861.381-018,
2 1991 WL 687457.  In that job, an individual

3     [l]ays building materials, such as brick, structural
4     tile, and concrete cinder, glass, gypsum, and terra cotta
5     block (except stone) to construct or repair walls,
6     partitions, arches, sewers, and other structures:
7     Measures distance from reference points and marks
8     guidelines on working surface to lay out work.  Spreads
9     soft bed (layer) of mortar that serves as base and binder
10     for block, using trowel.  Applies mortar to end of block
11     and positions block in mortar bed.  Taps block with
12     trowel to level, align, and embed in mortar, allowing
13     specified thickness of joint.  Removes excess mortar from
14     face of block, using trowel.  Finishes mortar between
15     brick with pointing tool or trowel.  Breaks bricks to fit
16     spaces too small for whole brick, using edge of trowel or
17     brick hammer.  Determines vertical and horizontal
18     alignment of courses, using plumb bob, gaugeline (tightly
19     stretched cord), and level.  Fastens brick or terra cotta
20     veneer to face of structures, with tie wires embedded in
21     mortar between bricks, or in anchor holes in veneer
22     brick.  May weld metal parts to steel structural members.
23     May apply plaster to walls and ceiling, using trowel, to
24     complete repair work.
25 DOT 861.381-018, 1991 WL 687457.

27     [8]  The DOT defines "frequently" as existing "from 1/3 to
28 2/3 of the time" and "constantly" as existing "2/3 or more of the
time."  DOT 861.381-018, 1991 WL 687457.

1    The DOT defines the stonemason job as "medium work"

2  involving "[e]xerting 20 to 50 pounds of force occasionally . . .

3  and/or 10 to 25 pounds of force frequently . . . and/or greater

4  than negligible up to 10 pounds of force constantly."[9]  DOT

5  861.381-038, 1991 WL 687462.  In that job, an individual

6         [s]ets stone to build stone structures, such as piers,

7         walls, and abutments, or lays walks, curbstones, or

8         special   types   of   masonry,   such   as   alberene

9         (acid-resistant soapstone for vats, tanks, and floors),

10        using mason's tools: Shapes stone preparatory to setting,

11        using chisel, hammer, and other shaping tools.  Spreads

12        mortar over stone and foundation with trowel and sets

13        stone in place by hand or with aid of crane.  Aligns

14        stone with plumbline and finishes joints between stone

15        with pointing trowel.  May spread mortar along mortar

16        guides to ensure joints of uniform thickness.  May clean

17        surface of finished wall to remove mortar, using muriatic

18        acid and brush.

19 DOT 861.381-038, 1991 WL 687462.

20    Although "[i]t is error for the ALJ to classify an

21 occupation 'according to the least demanding function,'"

22 Carmickle, 533 F.3d at 1166 (quoting Valencia v. Heckler, 751

23 F.2d 1082, 1086 (9th Cir. 1985)), here the VE's classification of

24 Plaintiff's past relevant work as a stonemason is consistent with

25 Plaintiff's description of his former job.  Plaintiff stated that

26 his job involved lifting and carrying brick, block, pavers, bags

_____

28    [9]    The DOT defines "occasionally" as existing "up to 1/3
of the time."  DOT 861.381-038, 1991 WL 687462.

20

of cement, stones, and rocks.  (AR 170-71.)  He would dig trenches, grade for concrete, instal forms, and lay and position brick, block, pavers, and other materials.  (AR 170.)  At the hearing, Plaintiff indicated that he "did basically everything" pertaining to "block walls, tile floors, all those sorts of things," and that the "easiest part" of his job had been laying tile.  (AR 45.)  Plaintiff also indicated that he had to "wheel around a wheelbarrow full of block or cement."  (AR 50.)  None of those activities is inconsistent with the DOT's description of the stonemason job, which involved, for example, setting stone to build "stone structures" such as walls and abutments; laying "walks, curbstones, or special types of masonry"; spreading mortar; and setting stone in place "by hand or with the aid of a crane."  861.381-038, 1991 WL 687462.

Plaintiff also said that in his previous job he had frequently lifted 25 pounds, which was consistent with the stonemason job's requirement that a person exert "20 to 50 pounds of force occasionally" and "10 to 25 pounds of force frequently." 861.381-038, 1991 WL 687462.[10]  And although Plaintiff stated in his work report that the heaviest weight he carried was 100 pounds or more, the VE accommodated that statement by testifying that Plaintiff had performed the concrete-mason job at the "heavy level" (AR 57) and ultimately testifying that a person with Plaintiff's limitations could perform his past relevant work only

---

[10]    The concrete-block-mason job, by contrast, required "[e]xerting 50 to 100 pounds of force frequently" and/or "10 to 20 pounds of force constantly."  DOT 861.381-018, 1991 WL 687457.

1    as generally performed, not as he actually performed it (AR 58).

2        The ALJ therefore reasonably relied on the testimony of the

3    VE – rather than the opinion of an unidentified state-agency

4    employee of unknown credentials – to find that Plaintiff's past

5    relevant work was that of a stonemason, particularly given that

6    Plaintiff never objected to the VE's characterization of his past

7    work.  See Bayliss, 427 F.3d at 1218 (finding that "VE's

8    recognized expertise provides the necessary foundation for his or

9    her testimony" and "no additional foundation is required.").

10       Plaintiff contends that the VE's testimony was in error

11   because "[n]owhere has [Plaintiff] described performing tasks

12   such as building stone structures, shaping stone, using a crane,

13   or cutting and dressing ornamental and structural stone, as is

14   described under the tasks of a stone mason."  (J. Stip. at 9.)

15   But Plaintiff clearly stated that he did "basically everything"

16   pertaining to block walls, tile floors, and "all those sorts of

17   things" (AR 45), which could easily include building stone

18   structures or shaping stone.  Indeed, Plaintiff specifically

19   mentioned that he worked with stone.  (AR 171.)  And the DOT

20   description states only that a stonemason "may" "set cut and

21   dressed ornamental or structural stone" and would set stone in

22   place "by hand or with the aid of a crane."  DOT 861.381-038,

23   1991 WL 687462.  Thus, at most, Plaintiff has established that

24   the evidence could possibly support an alternative finding, which

25   is not sufficient to warrant remand, particularly given that

26   Plaintiff had the burden of proof at step four.  See Thomas v.

27   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence

28   is susceptible to more than one rational interpretation, one of

22

1  which supports the ALJ's decision, the ALJ's conclusion must be
2  upheld."); <u>Pinto</u>, 249 F.3d at 844-45 (claimant has burden of
3  proving he cannot return to past relevant work).

4      In sum, the ALJ's reliance on the VE's testimony was
5  reasonable, especially in light of Plaintiff's failure at the
6  hearing to object to the VE's categorization of his past work,
7  question the VE about her opinion regarding Plaintiff's past
8  relevant work, or even point out the contradictory state-agency
9  decision guide.  <u>See Solorzano v. Astrue</u>, No. EDCV 11-369-PJW,
10  2012 WL 84527, at *6 (C.D. Cal. 2012) (at administrative hearing,
11  counsel has "obligation to take an active role and to raise
12  issues that may impact the ALJ's decision while the hearing is
13  proceeding so that they can be addressed").   Plaintiff is not
14  entitled to remand on this ground.

15      B.   The ALJ Properly Assessed Plaintiff's Credibility
16      Plaintiff contends that the ALJ "failed to set forth any
17  clear or convincing reasons to reject any of [Plaintiff's]
18  consistent and credible subjective statements and testimony under
19  oath regarding his symptoms and limitations."  (J. Stip. at 14.)
20          1.   Applicable law
21      An ALJ's assessment of symptom severity and claimant
22  credibility is entitled to "great weight."  <u>See Weetman v.
23  Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779
24  F.2d 528, 531 (9th Cir. 1986).   "[T]he ALJ is not required to
25  believe every allegation of disabling pain, or else disability
26  benefits would be available for the asking, a result plainly
27  contrary to 42 U.S.C. § 423(d)(5)(A)."  <u>Molina</u>, 674 F.3d at 1112
28  (internal quotation marks omitted).   In evaluating a claimant's

subjective symptom testimony, the ALJ engages in a two-step
analysis.  See Lingenfelter, 504 F.3d at 1035-36.  "First, the
ALJ must determine whether the claimant has presented objective
medical evidence of an underlying impairment [that] could
reasonably be expected to produce the pain or other symptoms
alleged."  Id. at 1036 (internal quotation marks omitted).  If
such objective medical evidence exists, the ALJ may not reject a
claimant's testimony "simply because there is no showing that the
impairment can reasonably produce the degree of symptom alleged."
Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in
original).  When the ALJ finds a claimant's subjective complaints
not credible, the ALJ must make specific findings that support
the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th
Cir. 2010).  Absent affirmative evidence of malingering, those
findings must provide "clear and convincing" reasons for
rejecting the claimant's testimony.  Lester, 81 F.3d at 834.  If
the ALJ's credibility finding is supported by substantial
evidence in the record, the reviewing court "may not engage in
second-guessing."  Thomas, 278 F.3d at 959.

     2.   Background

    In an undated disability report, Plaintiff wrote that he was
unable to work because of his back, shoulder, left-elbow, hand,
and finger pain; "[e]xtreme problems" with his back, shoulders,
elbow, and hands; diabetes; high blood pressure; and enlarged
prostate.  (AR 169.)  Plaintiff said that every day he was in
pain, which became "intolerable" if he did "physical work that
requires the use of my back, shoulders, elbow, and hands."  (Id.)
Plaintiff said his job was "very physical" and he "just can't do

it anymore."  (<u>Id.</u>)

At the January 17, 2012 hearing, the ALJ explained that she would be deciding whether the evidence supported a finding of disability prior to December 31, 2010, Plaintiff's last-insured date, and that his testimony therefore must relate to the time between his onset date of December 31, 2008, and his last-insured date of December 31, 2010.  (AR 30.)  Plaintiff testified that he lived in his daughter's house with his wife, daughter, son-in-law, and three small grandchildren.  (AR 29.)  He spent three to four hours a week driving to places such as the grocery store, Huntington Beach to pick up his elderly mother, or to dinner or a fast-food restaurant.  (AR 28-29.)  He went grocery shopping with his wife about four times a month for 30 to 45 minutes at a time. (AR 32.)  He had no difficulty preparing his own simple meals and taking care of his personal hygiene.  (AR 31.)  Plaintiff could dress himself but had trouble putting on his shoes and had to place his foot on a coffee table to tie his shoes.  (AR 31-32.) He helped "[v]ery little" with household chores because they were "difficult."  (AR 32.)  Plaintiff testified that he walked a mile a day and could "walk for a mile with no problem" but had difficulty stopping, turning, and twisting when walking.  (AR 33-34.)

Plaintiff's hobbies including fishing, which he had done about ten times over the previous year; Plaintiff would "just troll with the pole out the back of the boat" and would reel his line in himself.  (AR 35.)  Each day, Plaintiff watched two or three hours of television (AR 36), and two or three times a month, he had friends over for two to four hours to socialize,

play cards, barbeque, or have dinner (AR 37).

Plaintiff testified that he was unable to work because of pain in his hands, shoulders (particularly his right), elbows, and back and numbness in his back and leg. (AR 38.) He testified that "most recently" his knees had started to hurt. (Id.) Plaintiff said that if he "pick[s] up any weight whatsoever" he "might go for two or three days where . . . I'm in agony if I overexert it." (AR 43.) Plaintiff said if he "wipe[s] down a car with a duster," the pain in his shoulder was "excruciating." (Id.) He could wash a car but had to stop and sit down midway through. (Id.) Plaintiff could not lift a five-gallon bucket and "struggle[d]" to lift his grandchildren once they were about a year and a half old. (AR 44.) He had difficulty reaching in any direction and could lift, at most, a gallon of milk, though he said it would be difficult. (AR 48, 52.)

### 3. Discussion

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" Plaintiff's RFC for a limited range of medium work. (AR 14.) Reversal is not warranted based on the ALJ's alleged failure to make proper credibility findings or properly consider Plaintiff's subjective symptoms.

The ALJ permissibly discounted Plaintiff's credibility because his "allegations regarding the severity of his symptoms

and limitations" were "greater than expected in light of the
objective evidence of record."   (AR 13); see Carmickle, 533 F.3d
at 1161 ("Contradiction with the medical record is a sufficient
basis for rejecting the claimant's subjective testimony.");
Lingenfelter, 504 F.3d at 1040 (in determining credibility, ALJ
may consider "whether the alleged symptoms are consistent with
the medical evidence").   For example, Plaintiff complained of
"[e]xtreme problems" with his hands and elbows (AR 169), but a
right-hand x-ray showed only "[m]ild degenerative changes" and no
other abnormality (AR 204-05), a left-hand x-ray showed only mild
degenerative changes and a "[s]mall osteochondral body" (AR 231),
and a left-elbow x-ray showed only some spurring without any
other definitive abnormalities (AR 204).   Plaintiff also alleged
that he was unable to work in part because of his diabetes and
high blood pressure (AR 169), but as the ALJ noted (AR 11), those
conditions were adequately managed with medication, diet, and
exercise; resulted in no significant physical problems; and had
no more than a minimal effect on his ability to work (see, e.g.,
AR 218 (noting hypertension and diabetes "well controlled" on
medication), 227-28 (same), 298 (same), 352-53 (same), 360
(same), 254 (diabetes and hypertension "controlled" on
medication).)   Moreover, although the record does show that
Plaintiff had shoulder problems, in March 2010, his shoulders had
full range of motion bilaterally.   (AR 205.)   Thus, at least
during Plaintiff's insured period, his shoulder problems seem not
to have been as debilitating as Plaintiff alleged.

      The ALJ also permissibly discounted Plaintiff's credibility
because he "ha[d] not generally received the type of medical

1  treatment one would expect for a totally disabled individual."
2  (AR 14.)  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.
3  2008) (ALJ may infer that claimant's "response to conservative
4  treatment undermines [claimant's] reports regarding the disabling
5  nature of his pain"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th
6  Cir. 1995) (doctor's prescribed "conservative treatment"
7  suggested "lower level of both pain and functional limitation").
8  Indeed, although Plaintiff asserted that he suffered from
9  "extreme" and "intolerable" debilitating back and shoulder pain
10 during his insured period, his medical records reflect that his
11 pain was adequately controlled with pain medication.  Until at
12 least October 2009, Plaintiff's providers recommended he use only
13 over-the-counter medication, which effectively controlled his
14 pain.  (See AR 361 (May 2008, pain "controlled with ibuprofen"),
15 228 (Mar. 2009, same), 218 (Sept. 2009, same), 212 (Oct. 2009,
16 three ibuprofen and two Tylenol helped pain); see also AR 205
17 (Mar. 2010, advising Plaintiff to do home-exercise program and
18 use NSAIDs and capsaicin cream[11]).)  In January 2010, Plaintiff
19 reported that ibuprofen was no longer relieving his pain, and a
20
21
22

23     [11]    Capsaicin is the ingredient found in different types of
24 hot peppers, such as cayenne peppers, that makes the peppers
   spicy hot.  Capsaicin - Topic Overview, WebMD, http://www.webmd.
25 com/pain-management/tc/capsaicin-topic-overview (last updated
   June 29, 2011).  It is used to help relieve minor pain associated
26 with rheumatoid arthritis or muscle sprains and strains.
   Capsaicin (Topical Route), Mayo Clinic, http://www.mayoclinic.
27 org/drugs-supplements/capsaicin-topical-route/description/drg-200
   62561 (last updated Nov. 1, 2013).  It is available both over-
28 the-counter and with a prescription.  Id.

1   nurse practitioner prescribed Tylenol #3[12] (AR 208); in April,

2   Plaintiff reported that Tylenol #3 and ibuprofen were controlling

3   his pain (AR 254).  On December 7, 2010, just a few weeks before

4   Plaintiff's last-insured date of December 31, 2010 (AR 10), his

5   provider again noted that Plaintiff's pain was "controlled" with

6   ibuprofen and Tylenol #3 (AR 415).  Such conservative treatment

7   during the insured period undermines Plaintiff's complaints of

8   debilitating pain.

9       Plaintiff's medical records show that his back and shoulder

10  pain continued to be treated with medication even after his last-

11  insured date.  In April 2011, Plaintiff reported worsening right-

12  shoulder pain and chronic low-back pain "off and on," which was

13  treated with Tylenol #3 and NSAIDs (AR 400, 402-03 (noting

14  painful right-shoulder range of movement)), and in November 2011

15  he reported right-shoulder pain and chronic low-back pain and was

16  prescribed Vicodin[13] (AR 442 (reporting chronic low-back pain

17  radiating to the right leg, right-leg numbness and tingling, and

18  right-shoulder pain; ibuprofen and Tylenol #3 helped

19  "sometimes"), 444 (noting decreased right-shoulder and lumbar-

20  spine range of motion and prescribing Vicodin to replace

21  ibuprofen and Tylenol #3)).  And although those reports may

---

[12]     Tylenol #3 is a combination of acetaminophen and
codeine and is used to relieve mild to moderate pain.
Acetaminophen and Codeine, MedlinePlus, http://www.nlm.nih.gov
/medlineplus/druginfo/meds/a601005.html (last updated Sept. 1,
2010).

[13]     Vicodin is a narcotic analgesic used to relieve
moderate to severe pain.  Hydrocodone, MedlinePlus,
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601006.html
(last updated May 15, 2013).

indicate that Plaintiff's shoulder condition was worsening, they postdate his last-insured date by several months. As such, they fail to corroborate Plaintiff's claim that he was totally disabled during his insured period. See Johnson, 60 F.3d at 1432 (claimant "must prove that [he] was either permanently disabled or subject to a condition which became so severe as to disable [him] prior to the date upon which [his] disability insured status expires"); accord Harris v. Comm'r of Soc. Sec., 467 F. App'x 740, 741 (9th Cir. 2012).

Moreover, even when providers suggested other types of treatment in addition to medication, Plaintiff declined to pursue them. For example, in May 2008, Plaintiff told his provider that he was not interested in x-rays, treatment, or cortisone injections for his shoulders and "feels he can live with the pain." (AR 358, 361.) In September 2009, Plaintiff's provider noted that Plaintiff had "refuse[d] rehab" for his shoulders. (AR 218.) In October 2009, a provider suggested physical therapy, but Plaintiff "prefer[red] not to go." (AR 212.) In January 2010, a provider referred him to "rehab" for "poss[ible] cortisone injections" (AR 208), but nothing indicates that he ever pursued such treatment. That medical evidence also undermines Plaintiff's allegations of debilitating pain. Cf. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ may rely on "unexplained, or inadequately explained, failure to seek treatment" in rejecting claimant's credibility).

Finally, the ALJ permissibly discounted Plaintiff's credibility based on his activities of daily living, which were "inconsistent with [Plaintiff's] subjective complaints of

1  debilitating symptoms." (AR 14.) Plaintiff testified that he
2  drove a car for three or four hours a week, shopped for groceries
3  four times a month, went on fishing trips about ten times a year,
4  and socialized with friends two or three times a month. He could
5  take care of his own personal needs, prepare simple meals, and
6  wash his car if he took a break midway through. Plaintiff said he
7  could walk a mile with "no problem," though he had trouble
8  stopping, turning, and twisting. Plaintiff's medical records,
9  moreover, reflect that in March 2009, Plaintiff reported that he
10 exercised by walking daily and working in the yard (AR 226); in
11 April 2010, he reported that he was walking 1.5 miles every other
12 day and "does work up a sweat" (AR 253); and in December 2010, he
13 reported that he was walking every other day (AR 414). The ALJ
14 was therefore entitled to discount Plaintiff's credibility
15 because his claims of total disability were inconsistent with his
16 fairly normal reported daily activities. See Bray v. Comm'r of
17 Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ
18 properly discounted claimant's testimony because "she leads an
19 active lifestyle, including cleaning, cooking, walking her dogs,
20 and driving to appointments"); Molina, 674 F.3d at 1113 ("Even
21 where [claimant's] activities suggest some difficulty
22 functioning, they may be grounds for discrediting the claimant's
23 testimony to the extent that they contradict claims of a totally
24 debilitating impairment.").

25     Plaintiff is not entitled to remand on this ground.

## VI.  CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[14] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.


DATED: April 14, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[14]     This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

32